ROBERTS et al. v. DATE et al.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1903.)

No. 872.

1 CONTRACT FOR SALE OF INTEREST IN MINING CLAIMS—CONSTRUCTION.
    By a written contract defendant agreed, in consideration of the payment by plaintiff of his necessary expenses in developing mines in Alaska for the year, and certain payments and provisions for his wife during the year, to assign and transfer to plaintiff "an undivided one-

half interest in all properties he possesses in the territory of Alaska." It appeared from extrinsic evidence that defendant then owned nine mining claims previously located by him in Alaska, and that it was understood that the contract did not relate to any claims he might thereafter locate; also that there was an understanding, aside from the contract, that defendant should do one half the assessment work on the claims, while two other persons interested with plaintiff should do the other half, and the three went to Alaska together, but each taking his separate provisions. After doing a small amount of work it was abandoned by all, and defendant located a number of other claims during the season. *Held*, that the contract was one of bargain and sale, and not of partnership or grub-staking, and that it gave plaintiff no interest in the claims subsequently located by defendant.

Appeal from the District Court of the United States for Division No. 1 of the District of Alaska.

This suit was brought to establish the plaintiffs' alleged right in and to an undivided one-half interest in a certain mining claim called the Humdinger placer mining claim, located on Slate creek, Alaska, on the 22d day of June, 1900, by the defendants Date and Rosenthal; an undivided one-half interest in and to the Marie placer mining claim, located by the defendants Date and Rosenthal on Miller Gulch, on July 5, 1900; an undivided one-fifth interest in and to the Discovery placer mining claim, in Eagle Canyon, located June 19, 1900, by the defendants Date, Rosenthal, and Phad Da Chile, Archie Park, and H. E. F. King; an undivided one-eighth interest in and to the Eagle Canyon placer mining claim, in Eagle Canyon, located June 19, 1900, by the defendants Date, Rosenthal, and Phad Da Chile, H. E. F. King, John Stoll, M. Dempsey, Archie Park, and A. M. Powell—all within the Chisna mining district of Alaska. By the amended complaint it is alleged that on the 1st day of February, 1900, the plaintiff Roberts, together with one Finn and one Jilson, entered into an agreement in writing with the defendant Date, in the following words and figures: "This agreement, entered into this 1st day of February, 1900, by and between J. P. Roberts, W. E. Finn, and A. F. Jilson, parties of the first part, and Fred J. Date, party of the second part, for and in consideration of all necessary expenses in developing mines in Alaska for the year 1900 furnished by said parties of the first part, said party of the second part hereby agrees, and by these presents does agree to assign, transfer, and deliver to said parties of the first part, an undivided one-half interest in all properties he possesses in the territory of Alaska; furthermore, said parties of the first part agree to furnish Mrs. Fred J. Date, wife of the party of the second part, the sum of one hundred dollars in cash and necessary provisions for the year 1900." It is alleged that soon after February 1, 1900, Finn and Jilson withdrew from the agreement, and abandoned all interest therein, with the knowledge and consent of the defendant Date, and that thereupon the plaintiff Roberts, by and with Date's knowledge and consent, assumed all of the liabilities and obligations of the parties of the first part to the contract, and with like consent became entitled to receive all of the benefits accruing or to accrue to the parties of the first part thereunder; that the plaintiff Roberts, between the 1st day of February, 1900, and the month of August of the same year, furnished to the defendant Date and his wife, pursuant to the contract, money and provisions to the amount of about $700, and in all respects performed all of the acts and things required to be done by the parties of the first part to the agreement. It is alleged that about the month of August, 1900, the defendant Date, who, after the execution of the contract mentioned, had gone to the Chisna mining district, came out to the town of Valdes and informed the plaintiff Roberts that the mining claims owned and possessed by him (Date) on February 1, 1900, and referred to in the contract of that date, had turned out to be worthless, and that he (Date) and the defendant Rosenthal "had taken the grub and provisions furnished by said James P. Roberts, as aforesaid, and had gone prospecting in said Chisna mining district, and had located the said Humdinger placer mining claim, the Marie placer mining claim, the Discovery placer on Eagle Canyon, and the Eagle Canyon mining claim, hereinbefore mentioned,

while living upon and using the said grub and provisions, as so furnished by said Roberts, as aforesaid, and with the intent and understanding that the said James P. Roberts was entitled to an undivided one-half interest in and to all mining claims located by said Fred J. Date during said year 1900, while so using and living upon said provisions and supplies; that said James P. Roberts thereupon ratified and consented to said arrangement, and it was then and there understood and agreed by and between said Fred J. Date and said James P. Roberts that said Roberts was the owner of an undivided one-half interest in and to the mining claims described in paragraph 2 of this amended complaint, and that said Date would convey said interest to said Roberts by a good and sufficient deed or deeds of conveyance." The seventh paragraph of the amended complaint does not, as stated in the brief of the appellees, allege that the contract of February 1, 1900, was in August of that year abandoned and terminated, by the consent of both the defendant Date and the plaintiff Roberts, and the alleged agreement of August, 1900, thereupon entered into and executed in lieu thereof. It is true that it was so alleged in the seventh paragraph of the first amended complaint, but it appears from the record that the seventh paragraph of the amended complaint was subsequently amended so as to read as follows: "That thereupon, and pursuant to said agreement last mentioned [the agreement alleged to have been made in August, 1900], said James P. Roberts furnished additional grub and supplies to said Fred J. Date, of the value of more than three hundred dollars ($300.00); that said agreement dated February 1, 1900, was in August, 1900, amended and modified by the consent of both said Fred J. Date and said James P. Roberts, and said agreement as made in said month of August, 1900, was entered into and modified as aforesaid." The amended complaint further alleges that "the defendants Date and Rosenthal wrongfully and [un]lawfully" conspired together to cheat and defraud the plaintiff Roberts, and that while they were actually living upon the provisions so furnished by the plaintiff Roberts (the defendant Rosenthal having full knowledge that they were furnished by him) did wrongfully and unlawfully locate the Humdinger and Marie placer claims in their names, "with intent to cheat and defraud said Roberts out of an undivided one-fourth interest in said mining claims, the said Rosenthal in fact having no interest whatever in or to said Humdinger placer and Marie placer other than the said Fred J. Date was to give him after conveying to said Roberts his interest therein." It is alleged that before the commencement of the suit the plaintiff Roberts duly assigned an undivided interest in and to the above-named mining claims to his coplaintiffs Hogg and White, and that the plaintiffs are now co-owners thereof, and it is alleged that the defendants Beck and Van Brunt have, or claim to have, some interest in or to the premises adverse to plaintiffs, the nature of which is to the latter unknown, but which interests, if any, the plaintiffs allege were acquired subsequent to the acquisition of the plaintiffs' interests, and with full notice of the plaintiffs' alleged rights.

The pleadings and issues as to the other parties defendant it is unnecessary to refer to.

The answer of the defendant Date admits the making of the written contract of February 1, 1900, set out in the amended complaint, and alleges that Jilson withdrew therefrom about the 21st day of March, 1900. It admits that pursuant to that agreement "plaintiff Roberts, and said Finn and Jilson, furnished to the defendant Date, and Mrs. Fred J. Date, money and provisions to the amount of about seven hundred dollars between the 1st day of February and the 31st day of December, 1900." It denies the alleged oral agreement of August, 1900, and for further and separate answer alleges, among other things, that on the 1st day of February, 1900, the defendant Date was the owner and entitled to the possession of nine placer mining claims located in the Chisna mining district of Alaska, and two lode mining claims in the same territory. It then sets up the written contract of February 1, 1900, and his construction of it, including the averment that "it was distinctly understood by and between said Roberts, Jilson, and Finn and this defendant (Date) that said Roberts, Jilson, and Finn, or either of them, were not to have any interest whatever in any mining properties of any character,

located, discovered, or acquired by this defendant (Date) subsequent to the 1st day of February, 1900"; and further alleging that at the time of entering into the contract of February 1, 1900, "Roberts, Jilson, and Finn would perform one half of the assessment work required by law to be done on each and all of said claims for the year 1900, and that this defendant (Date) would perform the other half of the assessment on each and all of said claims for the said year"; that Roberts, Jilson, and Finn failed and refused to furnish the defendant Date "with all necessary expenses and supplies for the year 1900," notwithstanding which the defendant Date has at all times been ready and willing to convey to them an undivided one-half interest "in said property, in accordance with the terms of said contract" of February 1, 1900. The answer of the defendant Date sets up the making of the locations in 1900 of the claims described in the amended complaint, and that he and the defendant Rosenthal are the owners and in possession of the Humdinger and Marie placer claims, and that he is the owner and in possession of an undivided one-fifth interest in the Discovery placer mining claim, and an undivided one-eighth interest in the Eagle Canyon placer mining claim.

The plaintiffs' reply to the separate answer of the defendant Date denies that the plaintiffs have failed or refused to perform the assessment work upon the mining claims mentioned in paragraph 1 of the affirmative answer of the defendant Date for the year 1900, or for any year, and alleges the fact to be that Date did not do' any work at all upon those claims during the year 1900, and in the month of August of that year informed the plaintiff Roberts that those claims were worthless, and would not justify the doing of any assessment work thereon, and that he abandoned the same and permitted them to revert to the public domain. The plaintiffs made no denial of the allegation in the answer that it was distinctly understood between the parties to the agreement that Roberts, Jilson, and Finn were to have no interest in any mining property located or discovered by Date after February 1, 1900.

The case was tried before the court, during which trial the court, on motion of the defendant Rosenthal, dismissed the suit as to him, and granted a nonsuit as to the plaintiff White, on the ground that the evidence failed to show that he ever had any interest in or claim to the property in controversy.

Upon the conclusion of the trial the court made the following findings, designated "Findings of Fact":

"First. As to defendant Rosenthal, that plaintiffs have failed to establish by evidence the allegation of fraud and conspiracy alleged against the defendant Rosenthal in the eighth paragraph of plaintiffs' amended complaint, and have failed completely to establish any cause of action against the said Rosenthal; that the said defendant Rosenthal has established his interests in the property in controversy as set out in the first paragraph of his separate answer to plaintiffs' amended complaint, and that he is the owner of, and entitled to the immediate possession of, said interest, as follows: An undivided one-half interest in and to the Humdinger placer mining claim, described in the pleadings; an undivided one-half interest in and to the Marie placer mining claim, described in the pleadings; an undivided one-fifth interest in and to the Discovery placer mining claim on Eagle Canyon creek, described in the pleadings; an undivided one-eighth interest in and to the Eagle Canyon Company placer mining claim, described in the pleadings.

"Second. That plaintiffs have failed to establish by evidence the allegations of their complaint against defendants Fred J. Date, E. C. Van Brunt, and W. W. Beck, and that the contract set out in the third paragraph of plaintiffs' amended complaint referred only to property possessed by defendant Date at the time of the execution of said contract, to wit, February 1, 1900; that the property in controversy in this action was located and acquired subsequent to the execution of said contract, and was not intended to be included in said contract; that the amendments and modifications alleged to have been made in the month of August, 1900, to said contract of February 1, 1900, and set out in the sixth and seventh paragraphs of plaintiffs' amended complaint, are not sustained by the evidence; that plaintiffs have failed to establish the allegation of fraud and conspiracy alleged against Fred J. Date and Louis Rosenthal in the eighth paragraph of plaintiffs' amended complaint; that said defendant Fred J. Date has established his interest in the property in

controversy as set out in paragraph four of his separate answer to plaintiffs' amended complaint, and that he is the owner of, and entitled to immediate possession of, said interest, as follows: An undivided one-half interest in and to the Humdinger placer mining claim, described in the pleadings; an undivided one-half interest in and to the Marie placer mining claim, described in the pleadings; an undivided one-fifth interest in and to the Discovery placer mining claim on Eagle Canyon creek, described in the pleadings; an undivided one-eighth interest in and to the Eagle Canyon Company placer mining claim, described in the pleadings.

"Third. That whatever interest defendants E. C. Van Brunt and W. W. Beck have in the property in controversy they have acquired of and through the defendant Fred J. Date."

From these findings the court drew conclusions of law to the effect, first, that the plaintiffs had no right, title, or interest in or to any of the mining claims in question, and that they take nothing by reason of their complaint; second, that the defendants Date and Rosenthal are each the owners and entitled to the immediate possession of an undivided one-half of the Humdinger and Marie placer mining claims, an undivided one-fifth of the Discovery placer claim, and an undivided one-eighth of the Eagle Canyon placer claim, and judgment was entered in accordance therewith and for costs against the plaintiffs.

Winn & Shackleford, L. M. Hoefler, and Wm. Rix, for appellants.

T. J. Donohoe, T. R. Lyons, and Alfred Sutro, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The provision of the Code of Alaska in respect to findings in actions "of an equitable nature" is that "in all such actions the court in rendering its decision therein shall set out in writing its findings of fact upon all material issues of fact presented by the pleadings, together with its conclusions of law thereon." Code Civ. Proc. Alaska, § 372, 31 Stat. 395, c. 786; Carter's Annotated Codes, p. 226.

No exception was taken in the court below to the form or sufficiency of the findings, and, while it may be conceded that they do not fully meet the requirements of the statute, enough is found therein to enable this court to dispose of the appeal upon its merits, in the view which we take of the nature of the contract made between the parties on February 1, 1900. It clearly appears from the record that the trial court found upon the evidence that the agreement was not modified by a subsequent oral agreement, as alleged in the complaint. From an examination of the testimony, we find no ground for saying that the court was not justified in reaching that conclusion.

We come, therefore, to the consideration of the question whether, by the terms of the written agreement, any form of partnership was created, or the appellants were entitled to any kind of relief, as to the property in controversy in this suit. It reads as follows:

"This agreement entered into this 1st day of February, 1900, by and between J. P. Roberts, W. E. Finn, and A. F. Jilson, parties of the first part, and Fred J. Date, party of the second part, for and in consideration of all necessary expenses in developing mines in Alaska for the year 1900, furnished by said parties of the first part, said party of the second part hereby agrees, and by these presents does agree, to assign, transfer, and deliver to said parties of the first part an undivided one-half interest in all properties he possesses in the territory of Alaska. Furthermore, said parties of the first

part agree to furnish Mrs. Fred J. Date, wife of the party of the second part, the sum of one hundred dollars in cash, and necessary provisions for the year 1900."

This agreement, standing by itself and unaided by evidence in explanation of its terms, is clearly an agreement of bargain and sale. By its terms Date agreed with Roberts, Finn, and Jilson that in consideration of money and supplies to be furnished to his wife, and all supplies and expenses necessary for his outfit in developing mines in Alaska for the year 1900, he would transfer to them a half interest in the mines that he then possessed in Alaska. It is not a partnership agreement nor a grub-stake contract. It does not require Date to do any work in developing the mines which he then possessed and of which he contracted to transfer a half interest, nor does he covenant to do so. It does not require him to do development work at all. It binds him to do nothing but to transfer the stipulated interest in the mines he then had. The reference to the development of mines is only for the purpose of defining the extent of the consideration which the other parties were to pay him. It is the same as if Date had figured up in dollars and cents the amount of expenses for himself and his wife which he found it necessary to incur for the mining season of 1900, in whatever work he might engage, and expressed it in a definite sum as the consideration for his transfer. This we think is the plain meaning of the agreement, and its interpretation requires no aid from the surrounding circumstances. Its only uncertainty is the quantum of the supplies that were to be furnished to Date, but this does not concern us on the appeal, for the reason that the supplies have all been furnished, and thereby the stipulated consideration has been paid. But if, indeed, the contract is to be interpreted in the light of the antecedent negotiations and the acts of the parties, it appears, without dispute, that the first proposition was an offer to Roberts from Date to sell a half interest in this property "for a year's provisions" for himself and wife. It is shown, also, that after the execution of the agreement Finn, Jilson, and Date went together from Seattle to Valdes, and thence started out to the mines which had been located by Date, and which were some 200 miles in the interior, taking with them an outfit of provisions for the mining season, and that it was understood that Finn and Jilson were to go to the mines and do one-half of the annual assessment work on the same for the year 1900. Date testified—and it is not contradicted by any witness—that each of the three, in so setting out, separately owned one-third of the provisions which they carried. He alleged in his answer and he testified that it was expressly understood that the other parties to the agreement were to have no interest in anything that he should stake. No witness denied that this was true, and the reply of the appellant did not controvert it. A part of the provisions which they expected to use was a certain amount cached the year before at Amez Rapids, which Date had in August, 1899, contracted to buy from the owner for $100. It was agreed that Roberts was to pay for this cache, and that Date was to have one half thereof, and Finn and Jilson the other half. They started out from Valdes about the 20th or 25th of March.

Very soon afterwards Jilson abandoned the enterprise, and took out his one-third of the provisions. Finn and Date proceeded to the neighborhood of the mines which had been located by the latter, and about April 15th spent one day in prospecting the same. About the last of April Finn separated from Date and went his way, taking with him his one-third of the provisions, leaving Date with his one-third, which he testified was his own individual property, and his testimony in this respect was not contradicted by Roberts or by any one. Date went upon his claims, worked two days thereon, shoveled and panned and made some little trenches, and thereafter daily prospected the same until about the middle of May. He sent word to Roberts that Finn and Jilson had abandoned the enterprise, and requested Roberts to send some one in to do his share of the assessment work on the claims. About the 1st of July, Date abandoned his camp near the location of his claims, and went elsewhere, and made the discoveries and locations which are the subject of the present controversy. In the light of the surrounding circumstances and the acts of the parties, therefore, it is clear that the provisions which Date received and the money furnished him and his wife were the consideration of his transfer of an interest in his mines, and that, while there was a tenancy in common of the mines, there was no partnership and no partnership property, and no partnership enterprise was contemplated.

Such being the purport of the agreement, it becomes unnecessary to consider the other questions in the case. The decree is affirmed.

ROSS, Circuit Judge. I concur in the judgment on the ground that the written contract of February 1, 1900, is too ambiguous, and the oral testimony too contradictory and uncertain, to justify a decree in favor of the appellants.